EDWARD F. CARPENTER *vs.* HERBERT C. FISHER.

Worcester.    October 2, 1899. — December 1, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, BARKER, & LORING, JJ.

*Broker's Commission — Double Employment — Exceptions — Option.*

In an action against the buyer of land for a broker's commission, if the plaintiff's evidence leaves it doubtful whether, while acting for the defendant, he also was employed by A., the owner of the land, to sell it, or simply had an option on the property at a price named, the defendant is entitled to have the jury instructed that "if the plaintiff acted as agent for A., without disclosing the fact that he was such agent to the defendant, he cannot recover a commission from the defendant."

The fact that in an offer by B. for property which A. claims made him B.'s broker B. named the price which he was willing to pay the owner of the property and the sum which he was willing to pay A. is immaterial, in an action by A. against B. for a broker's commission.

A question of pleading not raised at the trial is not open on exceptions in this court, although the bill of exceptions states that the pleadings are made a part thereof.

If A. is given by B. merely an option on the latter's land at a price named, A., without violating any duty to B., may elect not to exercise such option and undertake the duties incident to acting as a broker for C. in the purchase of the land, and in that event the existence of the prior option is not a material fact which A. in good faith is bound to disclose to C.

CONTRACT, in two counts, to recover a commission for services in the purchase of certain premises in Worcester. Answer, a general denial. Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, which, after stating that the pleadings were made a part thereof, was in substance as follows.

The plaintiff testified that on Saturday, March 27, 1897, he went to the defendant's office and had a conversation with him; that the defendant spoke of two or three cases in which he had sold real estate and made some money, and the plaintiff said to him, "I think I could get for you the property at 87 Woodland Street so you could make a thousand dollars, and make it quick"; that the plaintiff described it to him, and told him what had been done with it, how it had been handled, and what was probably the value, in his opinion, and the defendant asked,

" What can I get it for ? " to which the plaintiff replied, " $6,500 "; that the defendant then said, " That is too much; you are making too much out of it. I will tell you what I will do; if it is just as you represent it, I will give $6,000 for it, and give you $100 "; that the plaintiff replied, " That is pretty low, but I am pretty sure of the money, and I will do it "; that the property in question belonged to Asa Ross; that at that time the plaintiff had in his hands the sale of that property for Ross; that the plaintiff and the defendant then went and examined the property thoroughly; that on the following Monday the plaintiff went to see the defendant, and said to him, " What are you going to say this morning ? " to which he replied, " Well, I have got to go to Fitchburg "; that the plaintiff then said, " There are two items I did not think of at the time; I would not wonder if I could get Mr. Ross to put in the insurance transfer and some coal that may be in the cellar, and if he does this it is probably worth pretty much what you are going to pay me for it altogether, and it would not cost me a cent to make the deal "; that the defendant said, " If you can do it I will do it "; that the plaintiff immediately saw Ross and communicated everything to him, telling him that the defendant would pay him $400 in money, and give him a second mortgage for $2,300 at five per cent, and take it at $6,000 if he would transfer the insurance policy and the coal; that Ross then said, " You ought not to have said anything about the insurance or coal; I never offered it for less than $6,000; I told you I would give you all over $6,000 "; that Ross finally told him that he might " make out the papers "; that he made them out immediately, and the parties signed them and the money was paid; that after the transaction was completed the plaintiff had an interview with the defendant, who said, " I cannot pay you for that commission to-day, for I paid him all the money I had "; that after some further.conversation the defendant told him to call that night and he would pay him; that he called at night and received $5 on account, the defendant promising to pay him more on the following Thursday; that when the plaintiff called on Thursday the defendant said, "I shall not pay you a dollar. If I had gone to Mr. Ross I should have saved $500; I could have got it for $5,500. You have beaten me; you have helped to do

it to get your commission out of it," or something like that; and that the plaintiff then brought this action.

On cross-examination the plaintiff testified, among other things, as follows: " Q. Did you have any conversation with Mr. Ross with relation to this property previous to seeing the defendant? A. I certainly did. — Q. In regard to selling it? A. Yes.— Q. Is there any other contract between you and him whereby you were to sell the property? A. Yes, a verbal contract that I should have all over $6,000 that I could get. — Q. That is from Mr. Ross? A. Yes.— Q. After that conversation you went to see the defendant with relation to selling it? A. I did not go for that purpose when I went in.— Q. You asked the defendant to buy it? A. I did. — Q. What did you say to him then? A. I asked him $6,500 for it. — Q. What did he say? A. He said I was making too much. — Q. Was that the first thing that was said? A. Yes; he said, 'I think you make $500 out of that.'— Q. Up to that time you had not informed him that you could get all that you made over $6,000? A. No, sir, but he guessed pretty near. — Q. He guessed? A. He guessed pretty close; he said that I was making $500."

The defendant denied in his testimony that he promised to pay the plaintiff anything for his services, and testified that the plaintiff was to sell the property, and was to have one half of the net profits of the transaction.

At the conclusion of the evidence the defendant requested the judge, first, to instruct the jury to find for the defendant; and, secondly, to instruct them as follows:

" If the plaintiff acted as agent for Ross, without disclosing the fact that he was such agent to the defendant, he cannot recover a commission from the defendant."

The judge refused to give the instructions requested, and did not give the jury any instructions concerning the double agency or double employment of the plaintiff.               ,

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*T. H. Sullivan*, for the defendant.

*C. Haggerty & J. R. Kane*, for the plaintiff.

LORING, J.   The second instruction requested should have been given.   The defendant had the right to assume in this

instruction that the plaintiff claimed to have been employed by the defendant as a broker. In both counts of his declaration he made allegations to that effect. He so testified; and his counsel in this court so contended in the brief on which the case was submitted.

It is admitted that a broker has no claim to be paid for his services if he undertakes to act for both vendor and vendee. The reasons for the rule are fully set forth in *Alvord* v. *Cook*, 174 Mass. 120. But it is contended that that principle is not applicable in this case, because, first, the plaintiff had an option from Ross, and was not acting as his agent; second, the defendant fixed the price he was willing to pay, and there was no question open as to it; and, third, the evidence discloses the fact that the defendant knew the plaintiff was acting for Ross.

The plaintiff testified that at the time of his conversation with the defendant he had the sale of the property in his hands for Asa Ross. We think it doubtful whether, taking all the plaintiff's testimony together, that statement is to be taken literally; that is to say, that it is to be taken as a characterization of what he afterwards testified to, that what he afterwards testified to was not an option, but was an employment by Ross of him as a broker; or whether, on the other hand, it was an inaccurate way of referring to what he afterwards testified to without characterizing that transaction, leaving it open for him to contend that all that passed between him and Ross was the giving to him of an option on the property for $6,000. The question which construction was the true one was a question which had to be determined by the jury, and the defendant in this instruction rightly asked to have it so determined.

The fact that in the offer which the plaintiff claimed made him the defendant's broker the defendant named the price which he was willing to pay the owner of the building and the sum he was willing to pay the plaintiff is immaterial. Whatever were the relations of the plaintiff to Ross, or anybody else, up to the time of that conversation, as soon as the plaintiff acceded to the defendant's proposition that the defendant should pay the plaintiff for his services in the purchase of this property, the plaintiff came into a relation of confidence with the defendant such that it was his duty to act in the

defendant's interest in the transaction in every reasonable way; after that the defendant had a right to believe that if the plaintiff then knew, or in the course of the proceedings discovered, any facts which he, the defendant, contemplating a purchase, ought to know, the plaintiff would disclose them, whether these facts related to the views or desires of the seller, to the price at which he would consent to sell if he could not get more, to the condition, qualities, or value of the property as bearing upon the price which the purchaser could reasonably afford to pay for it, or to anything else in the interest of the proposing purchaser. For example, if the plaintiff had known, or had reason to think, that the property could be bought for less than the sum named by the defendant as the sum he was willing to pay, it became his duty, upon accepting the defendant's promise to pay him for his services in the transaction, to disclose that to the defendant. The fact that the principal names a sum as the sum he is willing to pay is in no sense final. One of the benefits which such a principal is entitled to receive from the broker whose services he secures by his promise to pay for them is information and aid enabling him to get the property for less than he is, without that information and aid, willing to pay. And in this case the defendant finally paid less than the sum originally named by him through the plaintiff's services in getting Ross to throw in the coal and insurance.

It is barely possible that what passed between the plaintiff and defendant might have been interpreted to be a promise to pay $100 for something other than a commission for the plaintiff's services as a broker in purchasing the land in question. But that question does not arise in this action. This was an action to recover from the defendant a commission for services rendered by the plaintiff to the defendant in the purchase of the land in question. The plaintiff testified that he was employed as a broker, and his counsel so contended in the Superior Court and before this court. By the very form of the action the plaintiff contended that he acted as a broker for the defendant; and, so long as he prosecutes this action and not another action, the plaintiff must make good his right to be paid as a broker, and the defendant makes out a defence if he shows that the plaintiff has not rendered to him the duties owed by a broker to his principal.

The evidence cannot be said to disclose the fact that the defendant knew that the plaintiff was acting for Ross. On cross-examination the plaintiff testified that in the conversation between the plaintiff and the defendant the defendant said, " I think you make $500 out of that "; that up to that time he had not informed the defendant that he could get all that he made over $6,000, but that the defendant " guessed pretty near," that " he guessed pretty close; he said I was making $500." This was all the evidence on that point.

The plaintiff's contention that if he acted for both purchaser and seller that fact should have been set up in the answer is correct; but that point does not appear to have been taken at the trial, and is not before us in this bill of exceptions. *Bass* v. *Edwards*, 126 Mass. 445.

The presiding justice was right in refusing to instruct the jury to find for the defendant. On the evidence the jury could have found that the plaintiff never became a broker for Ross, but that all that passed between them was the giving to the plaintiff of an oral option on the land at $6,000. If Ross merely gave the plaintiff an option on the land at $6,000, the plaintiff owed him no duty by reason thereof, and he could, without violating any duty to Ross, elect not to exercise that option and undertake the duties incident to acting as a broker for the defendant. The previous existence of this option which the plaintiff in the case supposed had elected not to exercise was not in any way inconsistent with his being a broker for the defendant; by his election not to exercise the option any possible interest on the part of the plaintiff in the land ceased, and the existence of the prior option was not a material fact which the plaintiff in good faith was bound to disclose to his principal. The option having been given by word of mouth was not binding on Ross; but had the existence of the option been material this would have made no difference; the existence of such an arrangement, even if not binding, would have incapacitated one from accepting duties inconsistent with his interests under the arrangement.

*New trial ordered.*