DANIEL L. BARRY & another *vs.* ISAAC F. WOODBURY.

Suffolk.   March 4, 1910. — May 18, 1910.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Contract,* Consideration, Performance and breach.   *Practice, Civil,* Rulings and instructions.   *Pleading, Civil,* Declaration.

At the trial of an action of contract there was evidence which tended to show that the defendant sold to the plaintiff a certain boiler and engine which were fixtures in a factory building then owned by the defendant, that while the plaintiff, within a reasonable time after the sale, was removing the fixtures from the building, the defendant asked him to leave them there, as it would help him to dispose of the real estate, and that the defendant promised the plaintiff that, if the plaintiff would do so, he would pay the plaintiff for the boiler and engine when he sold the real estate, that the plaintiff granted the defendant's request, and left the fixtures in the factory.   *Held,* that by the sale the plaintiff was given a license to enter upon the land of the defendant, sever the fixtures and carry them away as his property, and that his relinquishment of that right constituted a sufficient consideration for the promise of the defendant to pay for the fixtures when he sold the premises.

At the trial of an action upon an agreement of the defendant to pay to the plaintiff, when the defendant should sell certain real estate, the value of certain fixtures attached thereto, which the defendant had sold to the plaintiff a year before but

which at the defendant's request the plaintiff had left on the premises to help the defendant to sell the real estate, it appeared that the defendant refused to pay the plaintiff the value of the fixtures, and a material question was whether the defendant had sold the real estate, so that the payment was due to the plaintiff. It appeared that, at the time of the sale of the fixtures by the defendant to the plaintiff, the defendant had owned the real estate subject only to a mortgage given by a corporation, which had been a prior owner, to secure bonds issued by it, that shortly after the sale of the fixtures to the plaintiff the real estate had been conveyed by a tax deed, pursuant to a tax sale previously made, to a third person, and that a year later there had been another tax sale and deed to the same person, that about a year after the time when the agreement was made the defendant became the owner of all the bonds to secure which the mortgage on the real estate had been given by the corporation, and that about three months later he procured a discharge of that mortgage and the holder of the tax titles delivered a release and the defendant gave a quitclaim deed to another person. The defendant testified as to this transaction that he thought that "he did receive something from somebody for a release of his interest in that property." *Held,* that there was evidence from which findings, that the defendant had sold the real estate and that therefore payment for the fixtures was due to the plaintiff from the defendant, were warranted.

One, who owned certain real estate subject to a mortgage given by a corporation which had been a prior owner to secure the payment of certain of its bonds, agreed to sell certain fixtures attached thereto. Before the purchaser of the fixtures removed them, the real estate was sold by the collector of taxes of the town where it was situated for the collection of taxes of the previous year. About a year after the sale of the fixtures and after the tax sale, but within a reasonable time, as the plaintiff was removing the fixtures the defendant asked him to leave them on the real estate so as to help a sale of it, and, in consideration of a promise of the defendant to pay for the fixtures when he sold the real estate, the plaintiff granted the request. After having sold the real estate, the defendant refused to pay the plaintiff for the fixtures, contending that there was no consideration for his promise, since by the sale of the fixtures without the assent of the mortgagee the plaintiff received nothing which he could relinquish, and since the title to the fixtures passed with the title to the land at the tax sale, and so, at the time of the defendant's promise, the plaintiff had no right to remove the fixtures. It appeared that about a year after the making of the agreement the defendant had become the owner of all of the bonds which were secured by the mortgage, and that at the time of the sale of the real estate by the defendant the mortgage at his request had been discharged and the tax title had been released. There was no evidence that any one on behalf of the mortgagee or of the owner of the tax title objected to the plaintiff's removing the fixtures. *Held,* that the mere existence of the mortgage and of the tax deed under the circumstances did not make the relinquishment by the plaintiff of what right he had to remove the fixtures under his contract with the defendant an insufficient consideration for the promise of the defendant to pay for the fixtures.

Where no question of pleading is expressly raised at a trial and the presiding judge rules that on all the evidence the action cannot be maintained and orders a verdict for the defendant, such ruling of itself raises no question of pleading, and if the case, which there is evidence to support, is substantially although imperfectly stated in the declaration, the sustaining of an exception by the plaintiff to the ruling of the judge will not be prevented by the imperfections in the declaration.

CONTRACT OR TORT, with a declaration, as amended, in four counts. Writ dated March 21, 1906.

The first count of the declaration was for the conversion, among other things, of an engine and a boiler.

The second count alleged that on or about October 23, 1902, the defendant and the plaintiff entered into a contract " by the terms of which the defendant agreed that, if the plaintiff would let certain property of the plaintiff . . . [the engine and boiler in question] . . . remain in the Watertown Rubber Factory so called and be sold by the defendant with said factory, the defendant would within a reasonable time after such sale pay to the plaintiff a reasonable sum for said property of the plaintiff," that the plaintiff did as requested and the defendant sold the factory with the property of the plaintiff, that a reasonable time had elapsed since the sale, that the plaintiff had made demand upon the defendant, but that the defendant refused and neglected to pay to the plaintiff a reasonable sum for the property.

The third count alleged that the plaintiffs were induced to allow the boiler and engine, which were in the nature of fixtures and were attached to the realty, to remain in the factory by fraudulent concealment on the part of the defendant of the fact that the property " had been or was about to be sold for unpaid taxes," that it was so sold, that the purchaser took possession thereof, and that thereby the plaintiffs lost the right to remove the property.

The fourth count was as follows: " The plaintiffs say that on or about October 23, 1902, they bought of the defendant the right to detach and carry away as their own personal property certain fixtures attached to real estate in Watertown aforesaid. . . . And the defendant after said purchase requested the plaintiffs not at once to detach or remove said fixtures, but to leave them upon the premises for the time being or until he had an opportunity to sell said real estate and promised the plaintiffs that if they complied with said request he would pay them a fair and reasonable price for said fixtures. And the plaintiffs thereupon did comply with said request and left said fixtures attached to said real estate. And the defendant thereafterwards permitted said real estate including said fixtures to be sold for unpaid taxes, neglected to exercise his right of redemption from said

sale, but on the contrary released and conveyed to the holder of said tax title his right of redemption, whereby the purchaser of said tax title, one H. C. Grant, became the owner of said fixtures. Wherefore the plaintiffs say the defendant owes them an amount equal to the fair value of said fixtures."

The case was tried before *Bond*, J.

The plaintiff Barry testified in substance that as a result of a conversation with the defendant the latter sold to him on October 23, 1902, certain machinery in the Watertown Rubber Factory described in a four page schedule which he handed to Barry at the same time that he gave him the following receipt: "Oct. 23rd 1902. Received from M. Norton & Co. ($3300.00) three thousand three hundred dollars being balance of amount due for machinery (in the Watertown rubber factory) owned by me. I. F. Woodbury." The boiler and engine which were the subject of this action were described in the schedule. Barry also testified that the defendant said to him that the schedule was an inventory of the property the defendant owned in the Watertown Rubber Factory; that the plaintiffs started to take out the machinery, and that the defendant told them that they need not be in any hurry, so that they took their time, and that in October, 1903, they had most of it removed ; that at that time the witness and an assistant were at the factory taking down the brickwork from a boiler (not the one in suit) when the defendant expostulated, and that, upon the witness's showing himself, the defendant said "Now you leave that other boiler and engine [which were the ones concerning which the action was brought] and it will help me better to dispose of the real estate, and when I sell it, why, I will pay you for it." The witness assented to the proposition and the boiler and engine were left in the factory. The boiler was built into the brickwork on the outside of the main building with a wooden shed over it. The engine was on a foundation of granite piers and was bolted down to them. The boiler and the engine were connected.

It appeared that on October 6, 1902, the premises to which the boiler and engine were affixed were sold by the collector of taxes of the town of Watertown at a sale for the unpaid taxes of 1901 to one Rogers and that Rogers was given a deed dated October 24, 1902, which was recorded on the next day; that

Rogers likewise purchased the premises at a sale for the collection of the taxes of 1902 and received a deed dated October 13, 1905.

It also appeared that on October 23, 1902, the premises to which the boiler and engine were affixed were subject to a mortgage which had been executed by the Indurated Fibre Company, a prior owner, to secure certain bonds of the company, and that, within a few months before January 28, 1905, the defendant became the owner of all of those bonds. On January 21, 1905, he wrote to the mortgagee demanding a discharge of the mortgage, stating in his letter that he was the " owner of the equity in the real estate." On the same day Rogers executed releases of his tax deeds to one Harry C. Grant. On January 31, 1905, the mortgagee discharged the mortgage and the defendant conveyed the premises to Grant. The defendant testified as to these transactions that he thought that " he did receive something from somebody for a release of his interest in that property ; that he presumed that some one in his ·behalf made an arrangement with Rogers, the first holder of the tax title before he released to Grant; that he presumed there were arrangements made that were authorized by him (Woodbury), possibly for the purpose of protecting his rights in that property."

At the close of the evidence, the presiding judge ruled that on all the evidence the plaintiffs could not recover, and ordered a verdict for the defendant; and the plaintiffs alleged exceptions.

*J. E. Hannigan,* for the plaintiffs.

*V. J. Loring, (J. H. McDonough* with him,) for the defendant.

HAMMOND, J. There was evidence of an agreement between the plaintiffs and the defendant, by the terms of which the latter contracted to sell to the former certain machinery, including the boiler and engine in question, then in a factory of the defendant, and that the plaintiffs paid the defendant the full contract price therefor and took the receipt of October 23, 1902. The machinery was to be regarded, when severed, as personal property. Under such a contract the plaintiffs were licensed to enter upon the land, sever the articles covered by the contract and carry them away as their own property. *Claflin* v. *Carpenter,* 4 Met. 580. *Douglas* v. *Shumway,* 13 Gray, 498. In

the absence of any specified time for the removal of the articles
the rule is that they must be removed within a reasonable time;
and under the circumstances of this case it was a question for
the jury whether that time had expired at the time of the con-
versation alleged to have taken place between Barry and the
defendant in October, 1903; as was also the question whether
that conversation ever took place.

If both of these questions are answered in favor of the plain-
tiffs, then there was a promise on the part of the defendant to
pay to the plaintiffs a sum of money equal to the value of the
boiler and engine upon a certain contingency; and the promise
was upon a sufficient consideration, namely, the relinquishment
of the right given to the plaintiffs by the contract to enter upon
the premises and sever and carry away the boiler and engine as
their own property. It might have been further found that the
sale by the defendant to Grant was a sale within the meaning
of the contract and consequently that in the absence of some
other ground of defense the defendant became answerable to
the plaintiffs for the reasonable price of the boiler and engine.

It is said that the defendant could not have given the right to
sever the fixtures without the consent of the mortgagee. Be it
so. It does not appear that the mortgagee ever made any ob-
jection, although the work of removal had been going on from
time to time for about a year; and there is nothing to show that
it ever would have made any objection. Indeed in view of these
facts, taken in connection with the relation sustained by the
defendant to the indebtedness secured by the mortgage deed,
it might well be found that the mortgagee as such had but little
interest in the matter as against that of the defendant, and was
willing that the articles should be removed.

The fact that the property had been sold for taxes was not
conclusive against the maintenance of the action. The defend-
ant had not been disturbed in his possession. The plaintiffs
were engaged in removing the articles in the exercise of a right
claimed by them, and, so far as they knew, their claim was just
and legal at least as against the defendant with whom alone
they were dealing. The owner of the tax title did not attempt
to interfere in the matter so far as appears by the record, and
there is nothing to show that he cared anything about it.

Upon the whole it seems clear that upon the facts not in dispute and those legitimately inferable from the evidence, the question whether the defendant was answerable to the plaintiffs for the value of the engine and the boiler is a question of fact to be determined by the jury under proper instructions.

The defendant further urges that even if the question is one of fact the plaintiffs have failed to state the case properly, or in other words that the case proved is not the case alleged in any of the counts.   But no question of pleading was expressly raised at the trial ; and where the general nature of the case stated in the pleadings is seen and the trouble is simply that it is imperfectly stated, a general ruling that upon the evidence the action cannot be maintained raises of itself no question of pleading.   As was said by Holmes, J., in *Tangney* v. *Sullivan,* 163 Mass. 166, " The ruling asked dealt with the evidence, not with the pleadings." See also *McLean* v. *Richardson,* 127 Mass. 339 ; *Batchelder* v. *Batchelder,* 2 Allen, 105 ; *Carpenter* v. *Fisher,* 175 Mass. 9.   The case of which there was evidence as above outlined was substantially within the " four quarters " of the fourth count, although there imperfectly stated.

*Exceptions sustained.*