F. WILLIAM OESTING *vs.* CITY OF NEW BEDFORD.

Bristol.   October 23, 1911. — January 2, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, & DECOURCY, JJ.

*Deed. Municipal Corporations,* Officers and agents. *Equity Jurisdiction,* To relieve against a forfeiture, Accident or mistake.

The owner of certain lots of land with buildings thereon on a February 28 executed and delivered to a city a deed conveying "certain lots or parcels of land," describing them by metes and bounds. Immediately before the habendum clause was the following: "All buildings to be removed from these premises on

or before July 1 next by the grantor or his assigns." There was no other mention of buildings in the deed. The habendum clause conveyed the " premises with all the privileges and appurtenances thereto belonging." *Held*, that it was the intention of the parties to the deed that the buildings should belong to the grantor if he severed them from the land on or before July 1, and otherwise that they should remain a part of the realty.

At the hearing of a suit in equity to enjoin a city from claiming ownership in certain buildings on land which the plaintiff had sold to it and from preventing a removal of the buildings by the plaintiff, there was evidence tending to show the following facts: The plaintiff on February 28 of a certain year had executed and delivered to the city a deed conveying the land by metes and bounds and containing before the habendum clause the following: " All buildings to be removed from these premises on or before July 1 next by the grantor or his assigns." The plaintiff had had several interviews with the mayor of the city before July 1 as a result of which the mayor, at a full meeting of the board of aldermen and in the presence of the plaintiff, stated that the plaintiff " would be unable to get away from the premises by the first of July " and that " if there were no objections " an extension would be granted. Some questions were asked by two aldermen but no objection was made. It was admitted that the records of the board of aldermen contained no reference to any discussion or action on the matter. The plaintiff did not begin to remove the buildings until September. The presiding judge ruled that " on all the evidence the plaintiff could not recover." *Held*, that the ruling was not erroneous, because, while the parties by agreement could have extended the time within which the buildings could have been removed, there was no evidence that such an agreement was made with the plaintiff by any officer of the city having authority to make it.

At the hearing of a suit in equity to enjoin a city from claiming ownership in certain buildings on land which the plaintiff had sold to it and from preventing a removal of the buildings by the plaintiff, there was evidence tending to show the following facts: The plaintiff on February 28 of a certain year had executed and delivered to the city a deed conveying the land by metes and bounds and containing before the habendum clause the following: " All buildings to be removed from these premises on or before July 1 next by the grantor or his assigns." The plaintiff in April made " everything ready as far as he could " for the moving of the buildings, but was unable to get a mover. He thereupon several times interviewed the mayor and in his presence the mayor laid the matter before the board of aldermen, saying that "if there were no objections the extension would be granted." There were no objections and no formal action was taken. In September for the first time the plaintiff procured the services of a mover, but the city denied that he then had any right to the buildings. The presiding judge ruled that " on all the evidence the plaintiff could not recover," and reported the case to this court for a determination of the correctness of the ruling, without making any findings of fact. *Held*, that the plaintiff had shown no equitable circumstances of accident or mistake under which relief should be given.

BILL IN EQUITY, filed in the Superior Court on October 11, 1910, seeking to enjoin the defendant "from claiming title to" certain buildings upon land conveyed by the plaintiff to the defendant by a deed containing the stipulation hereinafter set

out, "and from injuring and destroying the same and from.hindering, opposing, or obstructing the plaintiff from removing or moving or continuing to remove the said buildings from the defendant's land."

The case was heard by *King*, J.  It appeared that by a deed acknowledged on February 28 and recorded on March 2, 1910, the plaintiff conveyed to the defendant "the following certain lots or parcels of land situated in said New Bedford," the deed describing them by metes and bounds.  After the description of the lots, the deed contained the following: " All buildings to be removed from these premises on or before July 1st next by the Grantor or his assigns.  To have and to hold the granted premises with all the privileges and appurtenances thereto belonging to the said Grantee, the City of New Bedford, and its successors and assigns, to their own use and behoof forever."

There was no other mention of buildings in the deed.

The plaintiff testified that at the time of the conveyance there were three buildings on the land; that he owned land about four hundred feet from the location of the buildings and had made preparations to place them there; that on June 22, 1910, he applied to the mayor and aldermen of the defendant for permission to move the three buildings to his other land.  It appeared from the records of the board of aldermen that the permission was given him on that day.

The plaintiff further testified that he began operations on the buildings in April and removed all the foundations around them, taking out the curbing and large stone posts and a fence, and getting "everything ready as far as he could in April; " that there was only one building mover in New Bedford who could handle these buildings and that was one Hathaway; that outside of New Bedford the nearest movers were in Fall River and Brockton; that the plaintiff tried to get Hathaway to move the buildings several times between April and July 1, but could not get him because his timbers were all tied up and he " was driven up with work and was busy; " that it was impossible for Hathaway to move the houses or to do anything about them until he began work on them in September; that the plaintiff tried to get the movers from Fall River and Brockton but could not secure them " as they were too busy and were tied up with work," doing some

work for Hathaway; that the plaintiff told Hathaway that the buildings had to be away by July 1; that it was the plaintiff's intention to remove these buildings before July 1; that the plaintiff saw the mayor with reference to the removal of the buildings several times between June 21 and September 1; that the plaintiff attended the meeting of the board of aldermen on June 22, 1910, the full board being present, when "the mayor, in the presence of the full board, said that several applications to extend the time had been made by the owners of buildings on the land bought by the city," naming the plaintiff among others, "and that the parties would be unable to get away from the premises by the first of July, and that . . . if there were no objections the extension would be granted; that no objection was made, the full board of aldermen being present; that one of the aldermen . . . asked if the city was suffering in any way and if there was any harm done by these buildings not being got away by the first of July, and the mayor said that there was no harm done, that the city couldn't widen the street yet, and had no use for the land, and wasn't suffering in any way; that" another alderman "asked the same question and received the same response;" and that after the meeting the plaintiff saw the mayor a number of times previous to September 1 about the matter.

It was admitted that the records of the board of aldermen contained no reference to a discussion or of any action on the matter of the delay in the moving of the buildings.

The plaintiff in the middle of September moved two of the buildings to other land of the defendant, leaving one on the land in question.

On October 1, 1910, the defendant's solicitor in response to a request from the defendant's clerk of committees gave a written opinion that the plaintiff, "having failed to remove the buildings within the time which he stipulated in his option and the deed given the city, has parted with any right to claim the houses as property received to himself and the same belong to the city of New Bedford."

The foregoing is in substance all the evidence introduced at the hearing.

At the close of the evidence, the presiding judge "ruled, at the request of the defendant, that on all the evidence the

plaintiff could not recover, — saving the plaintiff's rights ; " and at the request of the parties reported the case to this court " on the agreement that if the ruling was right (on all the evidence that was admitted, and all that was excluded but should have been admitted) then the ruling is to stand and a decree is to be entered for the defendant, with costs ; if the ruling was wrong (on all the evidence that was admitted and all that was excluded but should have been admitted) then a decree is to be entered for the plaintiff with costs. "

*J. W. Cummings,* (*C. R. Cummings* with him,) for the plaintiff.

*B. B. Barney,* for the defendant.

BRALEY, J. The plaintiff's title to the buildings rests upon the construction of the deed under which the city acquired the freehold. *Noble* v. *Bosworth,* 19 Pick. 314. *Miller* v. *Washburn,* 117 Mass. 371. By the unambiguous language of the grant " certain lots or parcels of land " are conveyed, and under the terms of this description the estate included the buildings. *First Parish in Sudbury* v. *Jones,* 8 Cush. 184, 189. If the subsequent clause immediately preceding the habendum, " all buildings to be removed from these premises on or before July 1st next by the grantor or his assigns," leaves no doubt of the intention of the parties, that they were to belong to the plaintiff, yet until severed they would not become his personal property. But if for the purpose of severance the right of entry and removal are implied, it is also plain, that unless the right was exercised within the period the soil and buildings were to remain united. *Washington Mills Emery Manuf. Co.* v. *Weymouth & Braintree Mutual Fire Ins. Co.* 135 Mass. 503. *Poor* v. *Oakman,* 104 Mass. 309. *Perkins* v. *Stockwell,* 131 Mass. 529. *Barry* v. *Woodbury,* 205 Mass. 592. The plaintiff's separate property in the buildings as chattels, depended therefore upon compliance with the condition.

It is specifically averred in the answer, and appeared in the report, that the plaintiff failed to effect a severance before the date of termination, and while the parties by agreement could have extended the time, the interviews or negotiations which the plaintiff had with its various municipal officers did not operate as an extension binding upon the defendant. St. 1847, c. 60,

§§ 7, 8, 10.   *Wormstéad* v. *Lynn*, 184 Mass. 425.   *Adams* v. *County of Essex*, 205 Mass. 189.

The plaintiff invokes the rule, that equity will relieve against a forfeiture, and that on this ground alone the bill can be maintained.   But the parties dealt on an equal footing, and the plaintiff was the grantor.   It may be inferred from his evidence that he intended to preserve and to remove them to another location, and not to demolish them, and take away the materials.   The length of time, however, which might be required, and their value if preserved, were important factors which he must be presumed to have considered in making the sale, and it was within his power by an appropriate stipulation to have guarded against the consequences of a default, if the period reserved should prove to be insufficient.   *John Soley & Sons* v. *Jones*, 208 Mass. 561, 566.   The nature of the contract having expressly made the time of performance essential, and his right to the property dependent upon it, the plaintiff shows no equitable circumstances of accident or mistake under which relief should be given.   *Mactier* v. *Osborn*, 146 Mass. 399, 402. *Baltimore City Bank* v. *Smith*, 3 G. & J. 265.   *Brown* v. *Vandergrift*, 80 Penn. St. 142.   *Wells* v. *Smith*, 2 Edw. Ch. 78. *Baxter* v. *Lansing*, 7 Paige, 350.   *Klein* v. *New York Life Ins. Co.* 104 U. S. 88.   *Davis* v. *Thomas*, 1 Russ. & M. 506.

If the right of separation had been exercised seasonably, although the removal had been accidentally postponed beyond the limitation, the question argued by the plaintiff, whether, compensation to the defendant in damages being practicable, equitable relief should be granted, would have been presented. *Claflin* v. *Carpenter*, 4 Met. 580, 582, 583.   *Gates* v. *Johnston Lumber Co.* 172 Mass. 495.   *Henry* v. *Tupper*, 29 Vt. 358.   It is not open on the record and the result is, that under the reservation in the report, the bill must be dismissed with costs.

*Decree accordingly.*