## SURPLUS PROPERTIES CORP. v. UNITED STATES.

No. 49052.

United States Court of Claims.

Decided Nov. 6, 1951.

940

Irwin Geiger, Washington, D. C., for the plaintiff.

William A. Stern, II, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

Plaintiff herein seeks to recover $8,350.-58; arising out of two separate claims for freight and demurrage paid by plaintiff on shipments made by the War Assets Administration, under a surplus property sales contract. The Government has admitted liability upon one claim of $1,328.-35, which resulted from an erroneous ship-

ment of the wrong type property. The second claim is for $7,022.23 freight and demurrage charges paid by plaintiff on twenty-seven carloads of storage tanks shipped to it about July 2, 1946, by the War Assets Administration after plaintiff failed, after repeated requests, to issue shipping instructions for the bulk of its purchase.

On April 26, 1946, following a period of negotiations, plaintiff, a Seattle, Washington, surplus dealer, entered into a written agreement with the War Assets Administration, represented by officials of its Seattle regional office, to purchase 450 storage tanks of various capacities for $72,000. These tanks were located at South Tacoma Naval Base, Washington. The agreement, which consisted of a standard form surplus sales contract, provided that the purchaser should accept delivery and issue shipping instructions within ten days from the date of the sale, unless a longer period of time was expressly permitted in writing by the War Assets Administration. If the acceptance of delivery was not made within the above-mentioned period, War Assets Administration, without limiting any other rights it might have reserved the right to cancel the contract, or to charge storage for the goods sold. The right to ship in the event plaintiff delayed unreasonably to furnish shipping orders, was one of the rights of defendant under the contract. The agreement further provided that any other terms, or variations of the written terms, had to be agreed upon in writing by both parties. In a blank space on the agreement marked "Shipping Instructions—Routing and Delivery," the statement "Hold for shipping instructions," was filled in.

During the period from May 7, 1946, to July 2, 1946, plaintiff issued a series of nine shipping orders or instructions to defendant, all of which called for small lot shipments to various destinations. Such instructions issued through June 27, 1946, were accepted and executed by the defendant. However, in one instance, War Assets Administration erroneously shipped eight tanks of the wrong size to Savage, Minnesota, and it is the demurrage and freight charges for this shipment that constitute plaintiff's claim of $1,328.35. This item is not here in controversy.

Sometime in May 1946, about a month after purchase and after plaintiff had issued several small lot shipping instructions, an authorized agent of War Assets Administration informed plaintiff's secretary that these tanks had been sold for immediate bulk shipment and that War Assets Administration could not henceforth honor requests for individual shipments. Thereafter, defendant's agents constantly protested to plaintiff about this practice, but these protests by defendant were disregarded by plaintiff which insisted that the salesman of defendant had promised that small lot shipments might be made. War Assets Administration continued to ship tanks under small lot shipping instructions.

Sometime between June 10 and 15, 1946, following the erroneous Minnesota shipment, a War Assets Administration agent once again notified plaintiff that the Government would only fulfill instructions calling for the shipment of the balance of the tanks on hand. At this time plaintiff agreed to issue such shipping instruction if defendant would honor the small orders then before it. Defendant complied with plaintiff's request, but never received the promised shipping order. By July 1, 1946, War Assets Administration had made shipment of all small lot orders on hand, and on that date the subregional director of the South Tacoma Naval Base again contacted plaintiff and requested the immediate issuance of the promised shipping instructions for the balance of the tanks to one destination. Despite this request, plaintiff on July 2, 1946, again issued shipping instructions for a small order. On the same day, July 2, the field supervisor of War Assets Administration assigned to the South Tacoma Base, issued an order authorizing and directing the loading and shipment of the balance of the tanks to plaintiff's Seattle address, freight collect, although no instructions as to the bulk of the purchase had been issued by plaintiff. Plaintiff was not notified that this order was being issued.

On July 12, 1946, this shipment, consisting of twenty-seven carloads of tanks, arrived in Seattle, and on July 18, 1946, pursuant to an agreement between the parties, plaintiff, without prejudice to its claim for freight and demurrage resulting from this allegedly unauthorized shipment, unloaded the cars to prevent the further accumulation of demurrage charges.

Thereafter, plaintiff filed claims totaling $8,350.58 with the War Assets Administration, which amount represented a claim of $1,328.35 arising out of the erroneous shipment, and a claim of $7,022.23 representing the combined total of the freight and demurrage charges on the final shipment. The Seattle regional office, on January 9, 1947, admitted liability for the $1,328.35, but disallowed the claim arising out of the final shipment because of plaintiff's failure to issue shipping instructions in accordance with the contract. Plaintiff's appeal to the Washington, D. C., office of War Assets Administration resulted in a denial of both claims.

Plaintiff then took a further appeal to the Office of the General Counsel for War Assets Administration on November 13, 1947, and submitted with the appeal additional evidence in support of the $1,328.35 claim arising out of the erroneous shipment. By a decision dated August 16, 1948, the War Assets Administration allowed the full amount of both of plaintiff's claims, that is, $8,350.58, on the grounds that War Assets Administration was at fault on the claim for $1,328.35 in making the erroneous shipment, and that it was negligent in not notifying plaintiff that shipment of the balance of plaintiff's purchase was being made. However, the War Assets Administration also found that under the terms of the contract, it was entitled to charge plaintiff storage on the tanks for the period from May 12 to July 2, 1946, pursuant to paragraph (13) (2) of the terms and conditions of the contract (finding 2). Consequently, War Assets Administration entered a decision in the amount of $12,065.48 in favor of itself and against plaintiff, thereby leaving a balance, after deduction of plaintiff's claims of $8,350.58, of $3,714.90 due and owing from plaintiff to defendant, and payment of this balance was demanded.

Plaintiff obtained from the Office of the General Counsel a further review of the August 16, 1948, decision in so far as it permitted War Assets Administration to recover storage charges. Although plaintiff insisted that War Assets Administration had neither made the necessary election to assert its contract right to charge storage, nor given plaintiff notice of this election, the War Assets Administration, on November 24, 1948, affirmed its prior decision of August 16, 1948. The decision of August 16 was found to constitute sufficient timely notice to plaintiff that the claim for storage charges was being asserted.

■ In this suit the Government does not assert its claim for the $12,065.48 in storage charges, and concedes liability upon the $1,328.35 claim growing out of the erroneous shipment of the wrong-sized tanks. On the second claim defendant insists that it was justified in shipping the balance of the tanks, without either notifying plaintiff in writing, or receiving instructions authorizing shipment, and that it is not liable for the freight and demurrage incurred. This justification is based upon the terms and conditions of the contract, and defendant's repeated requests for shipping instructions, and also upon plaintiff's failure to issue those instructions within a reasonable time as it had promised. Defendant also insists that even if the notation on the contract, "Hold for shipping instructions," is construed as evidence of an intention of the parties to postpone the date of shipment beyond the required ten-day period, the notation nevertheless did not waive the requirement that the purchaser *furnish* shipping instructions within ten days, and that those instructions designate one or more destinations for the entire purchase; that it was not the intention that the Government's facilities should be used as a warehouse. Plaintiff insists that since it did not issue shipping instructions for the balance of the tanks, the agents of War Assets Administration, under their contractual duty to hold the goods for shipping instructions, should have at

least sent out a written notice of their intention to make the shipment in question. Plaintiff also maintains that it was promised, at the time the sale was consummated, that small-lot shipments might be made, but plaintiff's proof is not sufficient to establish this point, and the contract is not reasonably susceptible of that interpretation.

Under the conditions existing at the end of World War II, and at the time of this sale, it reasonably appears that the War Assets Administration never intended to become involved in small piecemeal shipments of any particular item of surplus, such as the tanks in question, which composed only a small portion of the overall surplus property program. On the contrary, the number of surplus items, the number of individual sales, and the mass of shipments involved, all indicate that sales such as the instant one were intended to be bulk sales resulting in a quick turnover and quick disposal, at least insofar as the South Tacoma Naval Base was concerned. This was the reason for the contract requirement that instructions for delivery be issued within ten days, unless otherwise expressly agreed upon in writing. Plaintiff, a dealer in such items, must have been cognizant of these facts. It definitely appears that plaintiff was simply trying to use Government facilities for the storage of the purchased tanks until such time as plaintiff could obtain individual purchasers therefor.

 While admittedly the contract in question required defendant to hold the property for shipping instructions, this provision cannot be reasonably construed to mean that defendant agreed to store the tanks until such times as might suit plaintiff's convenience. Defendant, by fulfilling on many occasions plaintiff's requests for the shipment of small orders, neither waived the contract requirement of shipping instructions for the entire purchase, nor bound itself to continue such practices. Defendant constantly attempted to assert its right to have instructions for the entire purchase. If we assume that the statement in the contract, "Hold for ship-

ping instructions," waived the requirement that plaintiff take delivery or furnish shipping instructions within the ten-day period specified elsewhere in the contract, and in its place substituted a requirement that plaintiff furnish shipping instructions for the entire purchase within a reasonable time, it is nevertheless well settled in the case of a sales contract that, in the absence of a specified time for the giving of shipping instructions by the purchaser, or for the removal of the goods by him, the law requires that the purchaser act within a reasonable time. Seabrook Coal Co. v. Moore, 25 Ga.App. 613, 103 S.E. 839; Barry v. Woodbury, 205 Mass. 592, 91 N.E. 902; Williston on Sales, 2d Ed., § 451. The failure of the purchaser to take the necessary steps may be regarded by the seller as a breach of contract, Maddox v. Wagner, 111 Ga. 146, 36 S.E. 609, or may be treated by him as an authorization to forward the goods to the purchaser without shipping instructions as required, by the contract. Cobb Lumber Co. v. Sunny South Grain Co., 36 Ga.App. 140, 135 S.E. 759.

Under the condition number thirteen of the contract, the War Assets Administration could have cancelled the contract upon plaintiff's failure to give instructions, or it could assert *any other* right it might have. We find that one of these other rights of the defendant as seller was to ship the goods to the purchaser without first notifying him in writing. In fact, such steps were the only logical ones for the War Assets Administration to take in this situation. Defendant had waited more than sixty days for the promised orders, which seems to us to have been more than a reasonable time in this situation. The Government had received full payment for the tanks and had delivered part of the purchase, and it was not therefore practicable for the War Assets Administration to cancel the contract. A cancellation would have defeated all that had been accomplished thus far and would have only necessitated a further disposal by the War Assets Administration, thereby further delaying the over-all surplus disposal program.

■ As to the contention that defendant should have given notice of its intention to forward the balance of the tanks, we find that such notice was unnecessary under the circumstances of this case. Defendant had on many occasions requested and urged plaintiff to give it such instructions, and it was plaintiff's failure to comply with these requests which culminated in the action taken by the War Assets Administration. Defendant had told plaintiff that it could not continue to hold the tanks, and plaintiff had promised to issue a shipping order for the balance of the tanks. It did not fulfill that promise. It should have been obvious to plaintiff, even in the absence of notice, that stronger measures by War Assets Administration would be forthcoming.

Accordingly, we conclude that plaintiff is entitled to recover the amount of $1,328.35, for which the Government concedes liability, and that plaintiff's claim for the $7,022.23 in freight and demurrage charges must be denied.

It is so ordered.