**REPUBLIC CHEMICAL CORPORATION**
v.
**The UNITED STATES.**
No. 445-52.

United States Court of Claims.
June 5, 1956.

950

Alfred S. Julien, New York City, for plaintiff.

David Orlikoff, Washington, D. C., Geo. S. Leonard, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

This is a suit to recover damages for the failure of the War Assets Administration to deliver 1,765,931 gallons of xylidine to plaintiff pursuant to a contract of sale. The Government defends on the ground that it was justified in refusing delivery because plaintiff had not tendered payment of the purchase price in cash or issued shipping instructions within a reasonable time from the date the contract of sale was executed.

About 1,900,000 gallons of xylidine were manufactured for the Army Air Force for use as an additive to aviation gasoline. This xylidine, which was stored in the Cactus Ordnance Works, Dumas, Tex., was, in 1945, declared as surplus to the War Assets Administration (hereinafter referred to as the WAA).

Xylidine is used in the chemical industry as an intermediate for the production of commercial dyes. Apart from that manufactured for the Army Air Force, the commercial production of this chemical in the United States amounted to from 40,000 to 50,000 gallons a year. At prevailing consumption levels the 1,900,000 gallons of xylidine represented a 40-year supply.

A market study was made by WAA to determine the possible uses for the surplus xylidine and it was found, among other things, that xylidine could technically be converted into xylenol. Xylenol is a chemical utilized in the manufacture of plastics and resins for which there was a large demand. There was some doubt as to whether the conversion could be made at a cost that would enable it to compete economically with coke-oven xylenol and considerable experimentation would be required to adapt xylidine to aniline uses.

The entire stock of xylidine stored at the Cactus Ordnance Works was advertised for sale in December 1946, f. o. b. location. WAA received four bids. Three bids were for small quantities and the fourth bid (plaintiff's bid) was for 1,765,931 gallons. Plaintiff was informed by telegram on February 4, 1947, that its bid for the 1,765,931 gallons of xylidine at $0.0612 per gallon was accepted. It was necessary for the Attorney General to approve the sale. His approval was given on March 27, 1947, and on April 11, 1947, plaintiff was furnished a written sales document containing all the terms and conditions of the contract for the sale of the xylidine. The contract stated that 1,765,931 gallons of xylidine had been sold to plaintiff at a price of $0.0612 per gallon, or for a total price of $108,074.98. The terms were "cash sale" and a note provided "Purchaser to furnish cars in condition for loading." Under the heading "Ship To" appeared "Will Give."

On April 14, 1947, plaintiff wrote WAA offering an irrevocable letter of credit in the sum of $108,074.98, which was to be drawn upon as shipments were requested by plaintiff. Payment of the drafts was then to be made 90 days after presentation. The WAA considered the letter of April 14 as an application for credit, because no payment would be made under the terms of the proposed letter of credit until plaintiff decided to issue shipping instructions and had actually been shipped the goods.

WAA wrote plaintiff on May 12, 1947, stating that WAA would accept a letter of credit on the following conditions: (1) submission to WAA of a satisfactory irrevocable letter of credit not to expire before January 1, 1948, for the full amount of the sale; (2) supply shipping instructions for the entire quantity of xylidine that would provide for full removal by September 1, 1947; (3) present a letter from the terminal to which the property was to be shipped stating that storage space for the entire amount had been contracted for and was available; (4) furnish a performance bond guaranteeing removal of the property by September 1, 1947, with a penalty provision of $1,000 per day; and (5) submit the above documents within 10 days. The plaintiff notified WAA that it declined to accept the conditions set forth in the letter of May 12, 1947.

The plaintiff was sent a letter by registered mail on August 26, 1947, which stated:

"This letter will serve as formal notice that unless remittance in full and shipping instructions for the above indicated sale of surplus property are received by this office within ten days from date of notification, this property will be resold for your account."

The plaintiff did not reply to this letter.

On October 15, 1947, plaintiff wrote to the Cactus Ordnance Works requesting that a statement be sent to its accountants, for inventory purposes, showing exactly the merchandise held by WAA for plaintiff. Captain D. M. McCrea, commanding officer of the Cactus Ordnance Works, referred the letter to WAA, which replied to plaintiff by letter dated October 24, 1947, stating:

"* * * As stated in our letter of August 26, 1947, your company is being held in default on a purchase of 1,765,931 gallons of zylidine [sic]. At the present time we are endeavoring to sell this material for your account with any resulting loss to the Government charged to you."

On November 5, 1947, WAA received a telephone call from plaintiff wherein plaintiff stated that it was making arrangements for shipping the xylidine and paying WAA for it. WAA told plaintiff at that time that the contract had been canceled and that any further discussion would have to be on the basis of negotiating a new contract of sale.

On November 21, 1947, WAA was notified by the Army Air Force that it needed the entire quantity of xylidine for its use and that it would take the appropriate action to withdraw the material from surplus and have it transferred to the Air Force. This telephone conversation was confirmed by telegram on November 25, 1947.

The plaintiff telephoned a representative of WAA at his home on November 24, 1947, and told him that it had completed arrangements for accepting delivery and would make payment the following day. The representative of WAA informed plaintiff that the Army Air Force had withdrawn the material from surplus and that WAA was justified in releasing the xylidine to the Air Force because of the failure of plaintiff to comply with the terms of defendant's letter of August 26, 1947. The plaintiff, on November 25, 1947, tendered a check to WAA for the full amount of the purchase price of the xylidine. The check was refused.

The plaintiff concedes, as it must, that if plaintiff did not pay for the xylidine and issue shipping instructions within a reasonable time that it was in default and defendant had the right to refuse performance or to cancel the contract. The plaintiff argues, however, that it did offer to pay for the xylidine and that it made arrangements to accept delivery within a reasonable time. The facts do not support plaintiff's argument. The tender by plaintiff on November 25, 1947, was the first time that it offered to pay the purchase price of the xylidine in cash, as required by the contract. Also, plaintiff had no storage facilities for the xylidine, either at the time its bid was submitted or at the time the sales docu-

ment was issued. It was not until November 24, 1947, that plaintiff made any arrangements for the storage of the xylidine. The plaintiff made no effort at any time during the period covered by this suit to provide cars for loading and removing the xylidine from the Cactus Ordnance Works. Both the tender of cash and the arrangements for storage were after the defendant had declared plaintiff to be in default and after the Air Force had notified WAA that it was withdrawing the xylidine from surplus. We agree with the finding of the commissioner of this court that plaintiff did not provide cars for shipping the xylidine or issue shipping instructions or tender payment of the purchase price in cash within a reasonable time from the date the contract of sale was executed. Therefore, plaintiff was in default and the defendant properly refused to deliver the xylidine to plaintiff. Compare Surplus Properties Corp. v. United States, 100 F. Supp. 939, 120 Ct.Cl. 709.

The plaintiff contends that if it was in default, the defendant waived this breach of the contract. Again the facts do not support plaintiff's contention. The terms of the contract required payment in cash and payment was to be made within a reasonable time. The defendant was persistent in its demands for payment and steadfastly maintained, after plaintiff refused to make payment in full and issue shipping instructions as demanded in its letter of August 26, 1947, that plaintiff had breached the contract and that it was holding plaintiff liable if any loss resulted on resale. The letter from WAA telling plaintiff that unless payment was made within 10 days it was going to be held in default was not even answered by plaintiff. The fact that defendant was aware that plaintiff was continuing its research and experimentation in connection with the conversion of xylidine, under the circumstances above set out, does not amount to a waiver of plaintiff's breach of contract. The plaintiff's argument on waiver of the breach of contract is based on discussions and arrangements made with Captain McCrea. Captain McCrea was an Army officer who had no connection with WAA. He was in charge of the Cactus Ordnance Works, and had charge of the storage facilities but he had no authority to act for WAA nor to modify or waive the terms of the contract entered into between WAA and plaintiff.

The plaintiff stated at the trial and the commissioner of this court has found that plaintiff had determined that it was neither advisable nor necessary to pay the purchase price of the xylidine until it had completed its arrangements for the conversion of the xylidine. Provision for the removal of the xylidine from the market without payment, and storage by the Government for an unlimited time, until plaintiff found out whether the conversion could economically be made is not found in the contract of sale and could hardly have been the intention of WAA.

The plaintiff is not entitled to recover, and its petition is therefore dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.