CATHERINE O. MACTIER *vs.* HANNAH OSBORN.

Suffolk.   January 11, 1888. — March 6, 1888.

Present : MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Lease — Covenant to Insure — Forfeiture — Equitable Relief.*

Equity will relieve against a forfeiture incurred by the breach of a covenant to insure in a lease of real estate, caused by accident or mistake, if no actual damage has been sustained by the lessor.

A lease of real estate contained a covenant that the lessee should keep the buildings "properly and fully insured, at all times during said term, in safe offices to be approved" by the lessor, to whom the insurance money was to be payable, and also contained the usual condition for re-entry on breach of any of the covenants without notice or demand. The lessee, a woman, at the expiration of policies which were satisfactory to the lessor, intending in good faith to have them renewed in the same amounts and form, took out through an insurance broker new policies, which, without her knowledge, were made payable to a mortgagee. The lessor, who had sustained no actual damage, without any demand upon the lessee, or any notice that the insurance was unsatisfactory, made an entry for an alleged breach of covenant, and thereafter refused to consult with the lessee as to changing the form of the policies. *Held,* that equity would relieve against such a breach of the covenant as was made by the lessee.

MORTON, C. J.   This is a writ of entry to recover an undivided third part of a parcel of real estate in Boston.

On November 7, 1873, Edward J. Holmes and William E. Perkins, trustees, being the owners of the land, executed a lease thereof to Levi B. Gay for the term of twenty years from the first day of January, 1874. The estate subject to the lease is now held by conveyances from said trustees and others, one third by the demandant, one third by the tenant, and one sixth

each by Julia M. Dehon and Sarah A. Treilhard. The tenant is now the lessee, holding the title of Gay by deed from him and by mesne conveyances. The lease contains the covenant that the lessee " will keep all buildings upon said premises during said term properly and fully insured, at all times during said term, in safe offices to be approved by said parties of the first part, and in such manner that the insurance money shall be payable to said parties of the first part, who shall deposit the same with the New England Trust Company or some safe bank; and such money shall be used in paying the expenses, as far as may be, of repairing or rebuilding said building or buildings by the party of the second part, and shall be drawn from the said company or bank at times and in amounts as needed for said purpose; and after said building or buildings shall have been so repaired or built, the remainder of such money, if any, shall be paid to said party of the second part. In case of failure by said party of the second part to repair or rebuild as aforesaid, said money, or so much thereof as may remain, shall belong or remain to the use of said parties of the first part." The lease contained the usual condition for re-entry on breach of any of the covenants, without notice or demand.

At the time the lease was assigned to the tenant there was insurance upon the building by several policies to the amount of thirty thousand dollars, payable in case of loss to the lessors, which was satisfactory to them. These policies were assigned to the tenant. At their expiration in March, 1886, one Osborn, acting for the tenant, took out, through a firm of insurance brokers, policies to the same amount, but they were made payable in case of loss to the Suffolk Savings Bank for Seamen and Others, to which bank the tenant was indebted to the amount of twenty thousand dollars for money borrowed to purchase the lease. In September, 1886, the demandant, having ascertained the form in which those policies were taken out, entered on the premises for an alleged breach of the covenant to insure, and on October 12, 1886, brought this suit to enforce the alleged forfeiture.

It appeared at the trial that neither the tenant nor the said Osborn had any knowledge until after the said entry by the demandant as to the form in which said policies were written, and

both meant in good faith that the covenants in the lease relating to insurance should be observed to the same extent that they were observed in the first policies. It also appeared that the demandant prior to the entry made no demand upon the tenant, and gave her no notice that the insurance was not satisfactory, and after the entry refused to consult with the tenant as to changing the form of the policies.

The case comes before us on a report, which provides that, if there has been no breach of the covenant in the lease as to insurance, or if there has been a breach but it is one which equity will relieve against, then judgment may be entered for the tenant.

The statement of the case shows that the claim of the demandant is *strictissimi juris.* She seeks to enforce a forfeiture for an alleged breach of covenant, which has arisen from an accident or mistake such as is likely to occur innocently, particularly in the case of a woman not accustomed to business affairs, and which did not arise from any wilful default or culpable negligence on the part of the tenant.

The covenant in question is a peculiar one. It does not create a clear and exactly defined duty on the part of the lessee, as would be the case if it had been a covenant to keep the building insured in an amount and office named, by policies payable to the lessors. The amount, the office, and the form of the policy are not fixed, and the covenant clearly contemplates that these are to be arranged by a conference between the parties. Under such a covenant, it may fairly be argued that, if a lessee in good faith procures insurance intending to observe the requirements of the covenant, but fails to do so, the lessor could not, without notice, enforce a forfeiture. But however this may be, and assuming that the lessee must at his own risk see to it that he observes the covenant, and therefore that there has been a breach of covenant and a forfeiture at law in this case, we are of opinion that it is a case in which equity ought to furnish relief.

The demandant cites many cases, mostly English, to the point that courts of equity will not grant relief from a forfeiture for breach of a condition to insure. This may be so where there is a wilful and intentional neglect to insure according to the covenant. But where the failure to insure is the result of accident

or mistake, each case must be determined by the circumstances of the particular case.

Judge Story states the rule in England to be, that " in all cases of forfeiture for the breach of any covenant, other than a covenant to pay rent, no relief ought to be granted in equity, unless upon the ground of accident, mistake, fraud, or surprise." Story Eq. Jur. § 1323.

It has been held in this court that equity will grant relief from a forfeiture for the non-payment of rent on the day it was due. *Atkins* v. *Chilson*, 11 Met. 112. And the same principle was applied where there had been a forfeiture for breach of a condition to indemnify a grantor in a deed against an outstanding mortgage and interest on it. *Sanborn* v. *Woodman*, 5 Cush. 36. In *Hancock* v. *Carlton*, 6 Gray, 39, there had been a forfeiture for breach of a condition to indemnify against a mortgage. The court refused equitable relief, but it was upon the ground that the forfeiture was caused by the laches of the party seeking relief; and the intimation of the opinions is clear that relief would be granted upon the ground of accident or mistake if proved. We see no reason why the same principle should not apply to a breach of a covenant to insure, caused by accident or mistake, where no actual damage has been sustained by the lessor.

The result of the authorities, supported by sound principle, is, that where there has been a breach of a covenant to pay rent equity will relieve against a forfeiture although the breach is wilful on the part of the lessee; and where there has been a breach of a covenant to perform some collateral duty, such as to repair or insure, which has been caused by accident or mistake, equity will relieve if the lessor can by compensation or otherwise be placed in the same condition as if the breach had not occurred. *Sanders* v. *Pope*, 12 Ves. 282, and note. *Livingston* v. *Tompkins*, 4 John. Ch. 415, 431. *Henry* v. *Tupper*, 29 Vt. 358.

In the case at bar, where the former policies, which were satisfactory to the lessors, expired, the lessee in good faith intended to have them renewed in the same amounts and form. By accident, or by a mistake of the insurance brokers, they were renewed in a form which does not fairly meet the requirements of the

covenant. This was not wilful or voluntary on her part. It was not an accidental forgetfulness to renew the policies. The property has been all the time fully insured. It was an occurrence not anticipated by her, and not known to her until after the demandant entered to enforce a forfeiture. No misconduct or culpable fault can be attributed to her. The lessors have not in fact been injured by the accident, and can now be put *in statu quo.* It is against equity and good conscience that the demandant should insist upon a forfeiture of a valuable leasehold estate.

We do not think that the tenant's acts in making a change in the policies after the demandant's entry have any important bearing upon the case. She applied to the demandant for a conference as to the form of the policies, but the demandant refused to treat with her. The tenant is willing to make insurance in a form which will comply with the covenant.

Under all the circumstances of this case we are of opinion that equity should relieve the tenant from the forfeiture, and that, according to the terms of the report, there should be

*Judgment for the tenant.*

*J. C. Gray & A. P. Loring,* for the demandant.
*R. M. Morse, Jr.,* (*W. P. Blake* with him,) for the tenant.