## TECHNICAL BREACHES OF LEASE NOT WARRANTING A FORFEITURE.

Common Pleas Court of Cuyahoga County.

THE KOBLITZ BROTHERS REALTY COMPANY v. JOHN D. ROCKE-
FELLER ET AL.

Decided, December 16, 1913.

*Landlord and Tenant—Relief Against Forfeiture of Lease—May be
Granted by Court of Equity—Where Not Willful or the Result of
Gross Negligence—Construction of Lease with Reference to Erec-
tion of a New Building—Failure to Record Assignment of Lease—
Insurance Rendered Invalid Thereby.*

1. Under the lease in question, the obligation on the part of the
   lessees to erect a new building could arise only in case they
   should elect to exercise the privilege so to do, and the lessor
   as a condition precedent should give his written consent thereto;
   and the right to forfeit the lease for breach of such a condition
   does not exist, notwithstanding an attempt appears to have been
   made in a negative clause in a subsequent paragraph of the lease
   to convert this privilege into a positive duty.

2. The breach complained of, in respect to the failure to record the
   assignment of the lease for a long period after it had been made,
   was ultimately cured by compliance with the condition of the
   lease so to do, and the lessor was thus saved from any prejudice
   resulting therefrom; and where it appears that the lessees and
   their assigns have paid rent for ten years to the amount of $60,000,
   together with taxes, assessments and all charges, and have also
   made improvements on the property to the extent of $10,000 or
   $12,000, and the lessor has suffered no prejudice from the technical
   breach of the lease through failure to record an assignment thereof
   within a reasonable time, the lessees and their assigns will be
   relieved therefrom.

3. So also with reference to a breach of a condition of the lease that
   the premises shall be kept insured, where it appears that the
   insurance was rendered invalid for a considerable period through
   failure to secure the consent of the insurance companies to the
   assignment which had been made of the lease, relief will be
   granted to the lessees and their assigns, upon its being shown that
   the invalidating of the insurance was clearly due to inadvertence
   and that the premiums on the insurance policies had been regularly
   paid during the intervening period.

*Milton S. Koblitz, Frank C. Scott and Hole & Hole,* for plaintiff.

*Holding, Masten, Duncan & Leckie,* for the Abeyton Realty Co.

NEFF, J.

On the 15th day of September, 1903, defendants, John D. Rockefeller and Laura S. Rockefeller, executed and delivered to Joseph Koblitz and Lewis Koblitz a lease for a term of ninety-nine years from and after the 1st day of October, 1903, upon premises adjoining the corner of Superior avenue and what was formerly known as Bank street in the city of Cleveland, on what has, during the course of the trial, been called the Weddell House property. Subsequently the fee of the property was conveyed by John D. and Laura S. Rockefeller to John D. Rockefeller, Jr., and by him to the Abeyton Realty Company, a corporation, which now owns and holds the title to the property in question and is the owner and holder of the lease.

Joseph and Lewis Koblitz entered into possession of said premises, and on the 27th day of April, 1909, Joseph and Lewis Koblitz assigned said lease to the plaintiff, a corporation.

On the 2d day of October, 1913, Clarence E. Terrell, assuming to act for the Abeyton Realty Company, took forcible possession of a part of the premises in question, that is to say, took actual possession of a store-room upon said premises, and undertook to, and in a measure did, take forcible possession of the entire premises. Thereupon the plaintiff filed its petition in this action, praying that the defendants be enjoined from interfering with plaintiff in its occupation of said premises, and praying also that its title to said premises be quieted. There is also coupled with this specific prayer, a prayer for such other and further relief as plaintiff may be entitled to in the premises.

The right of re-entry, as effected or attempted by the defendant, the Abeyton Realty Company, is predicated upon the claim that the provisions of said lease require the lessees and their assigns to erect upon said premises, within the first period of ten years, a building costing not less than $150,000. It is conceded

that no such building or no building whatever has been erected
by the original lessees or by their assignee, the plaintiff; so that,
if the lease in question properly construed, imposed an obliga-
tion upon the original lessees, or their assignee, the plaintiff, to
erect such a building, there has been a distinct and substantial
breach of the condition of such lease which would entitle the
defendant, the Abeyton Realty Company, proper election being
made in that behalf, to avoid the lease and to enter and take
possession of the premises.

The terms of the lease relating to the subject of the erection
of a new building upon the premises referred to are as follows:

"And it is further mutually agreed and understood between
the said lessor and the said lessees that said lessees shall have
and are hereby granted the right and privilege at any time
they see fit to repair or remodel the building and improvements
now upon said premises at their own expense, provided, how-
ever, that said changes, remodeling and improvements on said
land shall not impair or lessen the present value of the build-
ings and improvements now thereon. And said lessees shall
have and are hereby granted the right and privilege at any
time they may see fit to remove or destroy the buildings and
improvements now upon said premises or any part thereof, but
only on condition that said lessees will proceed without delay
thereafter to erect in their place and stead and at their own
expense a new building or buildings and improvements upon
said premises, to cost not less than one hundred and fifty thou-
sand dollars ($150,000). Provided, however, that said lessees
shall not exercise such right without having first obtained the
lessor's consent in writing for the removal of said buildings or
any part thereof, and furnishing and delivering to the said
lessor a good and sufficient bond to said lessor's satisfaction to
secure the erection of a new building or buildings and improve-
ments on said land to cost not less than one hundred and fifty
thousand dollars ($150,000).

"But in case the lessees shall fail to erect a first class, modern
building not less than eight stories in height upon said prem-
ises costing not less than one hundred and fifty thousand dol-
lars by or before the expiration of said first period of ten years,
i. e., by or before October 1st, 1913, it shall then be optional
with the lessor to terminate this lease at that time by giving
written notice to said lessees of his election so to do, or to con-
tinue the same in force without regard to the erection of such

new building. If this lease shall be terminated by the election of said lessor on or before October 1st, 1913, on account of the failure of said lessees to erect new building and improvements upon said premises before said date at a cost of not less than $150,000 as aforesaid, then and in that event all the buildings and improvements upon said premises shall revert to and remain the property of the lessor without compensation therefor to said lessees."

Of course the controlling consideration is the intent of the parties to the instrument. That intent is evidenced by the language of the instrument. A well-accepted canon of construction is, that if it is practicable, such construction shall be given to a written instrument as will give effect to all of its terms; and, in relation to leases, it is settled by an almost uniform current of authority that if the construction of a lease be doubtful, courts will give to such lease such construction as will avoid a forfeiture, rather than one that will compel a forfeiture.

It is contended by the defendants that the provisions of the lease, in respect to the erection of a new building, impose upon the lessees and upon their assignee a duty to erect a building, such a one as described in the lease, within the term of ten years after the execution and delivery of the lease.

It is contended by the plaintiff that, in this respect, the lease imposed no such duty upon the original lessees or their assignee, the plaintiff; and that there is no obligation created by the provisions of the lease to erect the building, unless the original lessees or their assignee, the plaintiff, should exercise the privilege of tearing down the building for the purpose of erecting a new building; that the obligation to build a new building is contingent upon the exercise of the privilege upon the part of the original lessees or the plaintiff, their assignee, to tear down the building on the premises at the time of the execution and delivery of the lease.

The first clause of the language quoted gives the lessees the right and privilege, at any time they see fit, to repair or remodel buildings now on the premises, conditioned only that the present value of the buildings shall not be lessened. The privi-

lege or right conferred by this clause would seem to cover the full term or ninety-nine years, that is, there is no language in this clause itself that would seem to restrict its operation to the first ten years of the lease, or to any part of such term less than the full term of the lease.

The next clause gives the lessees the right and privilege, at any time they see fit, to remove or destroy the buildings on the leased premises, on condition that the lessees shall proceed without delay to erect, in place of the buildings so removed or destroyed, a building to cost not less than one hundred and fifty thousand dollars. Such right or privilege can not be exercised without the written consent of the lessor, and the giving by the lessees of a good and sufficient bond, to the satisfaction of the lessor, to secure the erection of such building. There is also in this clause no suggestion that this language is to be limited to any portion of the term of the lease less than the entire term.

The foregoing clauses impose no obligation upon the lessees to erect a new building. They do not agree to erect a new building. The obligation to erect a new building would arise only in case they should elect to exercise the privilege so to do, and written consent of the lessor should be given thereto in writing, as a condition precedent. If written consent is withheld by the lessor, the old building could not be removed, and of course no new building could be erected. This clause confers a privilege on the lessees and does not define a duty. To declare a duty, and yet to give the lessor the right to defeat the discharge of the duty, at its option, would be illogical in the extreme. The lessor could not be compelled to give written consent. In this respect the lessees are at the mercy of the lessor.

If an obligation to erect a building in ten years is created by the lease, and if a breach of such obligation would entitle the lessor to void the lease, then it would be within the power of the lessor, by withholding written consent, to reduce the term of the lease from ninety-nine years to ten years.

It should be observed that the next paragraph begins with the word "but." This word would serve to connect the two paragraphs, and in effect make the meaning of the second

paragraph the same as if the word "dollars" were followed by a semi-colon instead of a period. There is no affirmative agreement on the part of the lessees to erect an eight-story building. The reference to an eight-story building is stated negatively, and this clause provides what shall occur if the lessees shall fail to erect a building. As I have already indicated, if this contention be correct, then the lessor could convert the lease from ninety-nine years to a ten year lease by simply refusing to consent in writing to the removal or destruction of the building on the premises at the time of the execution of the lease.

This negative clause, or second paragraph, attempts to convert a privilege of the lessees into a positive duty. If the parties had contemplated that the lessees should be bound to erect an eight-story building, costing not less than $150,000, within the first ten years, why does not the lease so provide distinctly and directly? Why should it be stated negatively? This is one of the most important provisions of the lease, and why should the obligations to arise out of this provision be left to mere conjecture? It is inconceivable that the parties would have done otherwise than specifically and expressly provide that a new building costing not less than $150,000 should be erected on the premises during the first decade of the lease if such was the intention of the parties. If such was the intention of the parties, no privilege to remove would have been given, because that is a condition precedent to the possibility of the erection of a new building. Much less would there have been reserved to the lessor the right to thwart such intention by withholding consent to remove or destroy the buildings on the premises. The lease appears to have been drawn by the agent of the original lessor. Had it been present to his thought that the lessees were to be obligated to erect a new building eight stories high, and costing $150,000, he would have said so directly, and would not have left such an obligation to be gathered by negative inference only. This clause is repugant to the previous clause; they can not stand together. Effect can not be given to both of them if the contention of the defendant be correct. The only way effect can be given to all the clauses is to so construe the language of the lease that in case lessees decide to tear

down the old building, they shall then erect a new building. This construction would harmonize and give effect to all the provisions of the contract. The only considerations that seem to make against this construction are first, the fact that the paragraphs are separated; next, the provision that the lease provides that upon failure to rebuild, all of the buildings and improvements shall revert to the lessor.

As to the subject-matter being stated in distinct or different paragraphs, the lease is not in script, but is type-written. The paragraphs were probably left to the person who used the type-writer. The natural, grammatical and logical statement of the subject-matter would be effected by using a semi-colon instead of a period after the word "dollars" and allowing the latter provision to follow as a clause of the same paragraph or sentence. I think, however, that the force to be given to the circumstance that there are two paragraphs is at least counter-vailed by the use of the word "but" in the second paragraph. The use of this word necessarily connects the second paragraph, and conditions its provisions by the terms of the first paragraph. They relate to the same subject-matter, and should be construed together.

There is some force in the suggestion that the last sentence of the second paragraph provides that in case of failure to build, all buildings on the premises shall revert to the lessor. It is argued from this that there was an obligation to build, even if the old buildings were not removed. This contention is more ingenious than sound. The lessor, by withholding consent, can prevent the erection of a new building; yet it is claimed that the terms of the lease create an absolute, unconditional obligation on the lessees to erect a new building. The second paragraph undoubtedly, standing alone, would create such an obligation, that is, an obligation to build; but whatever else may be said, it seems to me the provisions of the lease as to the erection of a new building are at least uncertain or doubtful or ambiguous; and courts of equity would therefore be inclined to refuse to give such provision such construction as would avoid the lease, especially in the light of the fact

established by the evidence, that the lessees or their assignee have paid the rent, taxes and expenses as they accrued, and have expended at least ten thousand dollars on improvements upon the property. The right to forfeit a lease for breach of condition must be clear, or it does not exist.

In view of the construction which I place upon the language of the lease, with regard to the question whether failure to erect a new building on the premises constituted a breach of the condition of such lease, it will not be necessary for me to consider many other matters which were argued by counsel, as, for example, whether the Abeyton Realty Company elected to terminate the lease, whether notices of such intention to terminate it were served at the right time, or upon proper persons, or at the right place, or whether the Abeyton Realty Company, in its corporate capacity, elected to forfeit the lease for failure on the part of the lessees to erect a new building.

From what I have said, it would appear that plaintiff would be entitled to the relief prayed for in its petition, unless certain matters set forth in defendants' answer or counter-claim would disentitle plaintiff to such relief.

The amended answer of the Abeyton Realty Company avers that the lease in question contained the following provisions:

"The lessees further covenant and agree not to assign and transfer this lease except with the lessor's consent in writing, unless the rents and all charges, taxes, assessments and penalties, and all liens of any other kind suffered or permitted by said lessees, which the said lessees have hereinbefore covenanted to discharge, have been duly paid, excepting therefrom only such obligations as are not at the time of such assignment due or payable; nor unless the assignee shall expressly assume the lessees' engagements hereunder; nor unless the legal instrument of assignment thereto and assumption of lessees' engagements hereunder and acceptance thereof by such assignees, shall be recorded in the recorder's office of said county.

"This lease is made upon condition that the lessees shall punctually perform all their covenants and agreements herein set forth, and that if at any time the rent, taxes, assessments or other legal charges and payments aforesaid, or any of them, or any part thereof, shall become in arrears and unpaid for a period of three (3) calender months after becoming due, or

if any of the covenants and agreements aforesaid shall not be performed as hereinbefore or hereinafter stipulated to be performed by said lessees, the said lessor at any time thereafter shall have full right at his election to enter upon the above described premises and bring suit for and collect all rents. taxes, assessments, payments or other legal charges which may have accrued up to the time of such entry, and thenceforth from the time of such entry this lease shall become void to all intents and purposes whatsoever and this lease and all improvements made upon the premises herein described shall be forfeited to the said lessor without any compensation whatever to said lessees as liquidated damages for such non-performance.''

That said lease contained the further provision:

''And the said lessee hereby covenants and agrees to keep all buildings and improvements now on said premises insured for at least twenty-five thousand dollars ($25,000), and such new buildings and improvements as may hereafter be made and erected upon said premises under the provisions of this lease insured for seventy (70) per cent. of their insurable value; all such insurance to be placed in responsible insurance companies and to contain a clause in the policies therefore providing that the loss, if any, shall be payable to the first party as his interest may appear, and such policies shall be duly delivered to said first party, the lessor, and held by him.''

It is also averred that the original lessees from time to time took out policies covering the leased premises, loss payable to defendant, as its interest should appear; that the policies were not in fact assigned by Joseph and Lewis Koblitz to the plaintiff in this case until some time subsequent to September 29th, 1913, when certain riders or attachments to said policies were issued and attached thereto recognizing plaintiff as the insured from and after September 29, 1913. That the said failure to assign the policies to the plaintiff and to have such assignment assented to by the insurance companies, operated to render such policies uncollectible from said companies; and that such failure so to assign such policies and to secure the consent of the companies thereto constituted a violation of the covenant and agreement of said lease in respect to insurance.

It is also averred that when the defendant became aware of such condition, the Abeyton Realty Company gave notice on the 14th day of October, 1913, both to the plaintiff and to Lewis Koblitz and Joseph Koblitz, that the Abeyton Realty Company elected to terminate said lease and to re-enter upon the leased premises, by reason of such failure to keep the premises insured.

The answer and cross-petition of the Abeyton Realty Compan further avers that when plaintiff became aware of the fact that the lease had been assigned to the plaintiff, on the 6th day of October, 1913, it gave written notice to the plaintiff of its election to terminate said lease and to re-enter upon the leased premises by reason of such assignment.

A reply was filed by the plaintiff to the answer and cross-petition of the Abeyton Realty Company, putting in issue various matters alleged in such answer and cross-petition. It appears, however, to be well established by the proof that such assignment of the lease was not recorded until September 29, 1913.

It is also clear from the evidence that while Joseph and Lewis Koblitz executed an assignment of the policies of insurance upon the buildings upon the premises covered by the lease, the consent of the insurance companies was not secured to such assignment. The policies, however, were kept alive, the premiums being paid from time to time by the plaintiff; but inasmuch as the consent of the companies to such assignment had not been procured, the lack of such consent would constitute a valid defense in behalf of such companies to any action which might be prosecuted upon such policies. It is therefore clear from the evidence that there was a breach of the conditions of the lease as to the recording of the assignment of such lease. There was also a breach of the conditions of said lease as to the covenant to keep the premises insured; and the question presented is, whether those breaches are such as to disentitle plaintiff in equity to the relief prayed for in this action.

It should be observed that the breach with respect to the assignment does not arise from the fact that the assignment

was made, because under the proof I find that the conditions were such as to warrant the making of an assignment by Lewis Koblitz and Joseph Koblitz to the Koblitz Realty Company; that is, in other words, the assignment of the lease did not constitute a breach of a provision of the lease. The lease does not specifically provide when the record of such assignment shall be made. That being true, it would result that such record should be made within a reasonable time after such assignment. I am of the opinion that the record of the assignment of the lease was not made within a reasonable time after such assignment.

The question to be determined is, whether, under all the circumstances, the fact that such assignment was not recorded until long after the assignment was made disentitles the plaintiff to be relieved from a forfeiture of the lease for such a breach of its conditions.

It was at first insisted by plaintiff's counsel in argument that neither this nor any other breach of a condition subsequent would empower a court of equity to declare a forfeiture of the lease; and in this connection the 82 Missouri Appeals, 618, and the case reported in 10 Ohio, 31, were cited; but later on, in the progress of the trial, counsel for plaintiff waived this point, and indeed counsel on both sides have expressed the desire that this court shall assume jurisdiction of all matters set up in the pleadings, to the end that the whole case may be disposed of at this hearing.

It is contended by defendant that failure to record the assignment of the lease would entitle defendant company to terminate the lease; or, if not, that in any event such breach would disentitle plaintiff in equity to be relieved from forfeiture of the lease.

In view of the fact that both sides have requested this court to exercise jurisdiction in respect to this subject-matter, I think it unimportant whether the pleading filed by defendants be denominated an answer, or cross-petition, or both.

It should be borne in mind that the breach complained of is not that the lease in question was assigned, but that the

assignment was not made of record. This fact would render unimportant, except by analogy, texts and adjudications relative to the subject of assignment with relation to the avoidance of leases. I think the law is the same as applicable to the question of the failure to record and as to failure to insure; and I shall therefore not undertake a separate examination of the law as to each of these propositions.

Numerous authorities have been cited by both sides. In the *24th Encyclopedia of Law and Procedure,* at page 1364, under the head of "relief against forfeiture," the text-writer speaks thus:

"Where compensation can be fully made, equity will generally relieve against a forfeiture. For instance, equity will relieve against a forfeiture for non-payment of rent where, under the circumstances, it would be inequitable, and full compensation can be made for the tenant's default on payment by the tenant of the rent due and costs and damages; but relief will not ordinarily be granted against a forfeiture for the breach of other covenants in a lease, in the absence of equitable circumstances, such as accident, mistake or justifiable reliance on the conduct of the lessor. Relief from a forfeiture for the non-payment of rent is not a matter of right however, and may be refused on collateral equitable grounds, such as delay in seeking relief; and relief will not be granted after the term has expired by the efflux of time even though the lease gives an option of purchase to be exercised during the term, which the lessee has attempted to exercise after forfeiture."

In the *18th American & English Encyclopaedia of Law,* Second Edition, on page 391, under the head of "Fraud, Accident, or Mistake," is found the following language:

"Where the enforcement of the forfeiture would operate as a fraud, courts of equity have granted relief though the forfeiture was incurred for other reasons than the non-payment of rent. Thus, relief has been granted where the lessee's breach was caused by conduct of the lessor which naturally induced him to believe that a performance of the conditions or covenants would not be exacted, or where non-performance was caused by the act of the landlord. And relief has also been granted where the forfeiture was incurred through accident or mistake. Where,

however, a forfeiture was incurred because the lessee or his solicitor forgot that the lease contained the covenant for breach of which the forfeiture was incurred, it was held that this was not a mistake so as to authorize a court of equity to grant relief from forfeiture."

In *Pomeroy's Equity Jurisprudence*, Vol. 2, Third Edition, at Section 849, the writer, in discussing the question, under what circumstances relief may be granted where a party is mistaken as to his own existing legal rights, interests or relations, the text-writer uses this language:

"A person may be ignorant or mistaken as to his own antecedent existing legal rights, interests, duties, liabilities, or other relations, while he accurately understands the legal scope of a transaction into which he enters, and its legal effect upon his rights and liabilities. It will be found that the great majority, if not indeed all, of the well-considered decisions in which relief has been extended to mistakes pure and simple fall within this class; and also, that whenever cases of this kind have arisen, relief has almost always been granted, although not always on this ground. Courts have felt the imperative demands of justice, and have aided the mistaken parties, although they have often assigned as the reason for doing so some inequitable conduct of the other party which they have inferred or assumed. The real reason for this judicial tendency is obvious, although it has not always been assigned."

And in the same section, the writer uses this language:

"I therefore venture to formulate the following general rule as being eminently just and based on principle, and furnishing a simple criterion defining the extent of the jurisdiction. The number of decisions which support it, and which it explains, is very great. Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property or contract or personal status, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

Other texts have been cited, but it is apparent from what I have read, that if the default of the lessee be referable to a mistake of fact, or be not wilful, or if it does not result from gross negligence, courts of equity may relieve from forfeiture because of such default. The exercise of such relief or the granting of such relief may depend upon the circumstances of each particular case. The right to grant relief under such circumstances is undoubted. Whether the facts warrant the granting of such relief must depend upon the circumstances of each particular case.

A large number of cases have been cited by counsel for the defendant, the Abeyton Realty Company, in which the courts of England and the courts of many states of the Union have refused to grant relief. In the earlier history of equitable jurisprudence in England, relief was granted only where there was a failure to pay rent. The courts in all instances, apparently, refused to grant from forfeiture where the breach related to something besides the payment of rent, and that line of cases rests upon the doctrine, apparently, that failure to pay rent may be fully compensated in money, whereas, as to collateral covenants or conditions, the breach will not be fully compensated in money; therefore, in England courts of equity in the earlier history of English jurisprudence, uniformly declined to grant such relief. But even in England the rigor of the ancient rule has been very much softened, and an act of Parliament was passed with a view to softening the rigor of the ancient English rule. The English rule has been very largely followed in the United States, and it was my conviction at first that the overwhelming weight of authority is, that relief can not be granted except as to failure to pay rent.

In the case of *Kann* v. *King*, 240 U. S., 43, in the course of the opinion rendered in the case by Mr. Justice White, the court uses this language (pp. 54, 55):

"That a court of equity, even in the absence of special circumstances of fraud, accident or mistake, may relieve against a forfeiture incurred by the breach of a covenant to pay rent, on the payment or tender of all arrears of rent and interest

by a defaulting lessee, ·is elementary.  But that principle can not control this case, even if it be conceded, for the sake of argument, that it applies to collateral covenants in leases, such as the obligation to repair, to insure (and even to pay taxes), said in the Sheets case to be settled in England adversely to· such right, but to be an open question in this country, and as to which there may be differences of. opinion in state courts of last resort.''

The court calls attention to the fact that in England the current of authority has been adverse to the right to relief, but that in this country it may be said to be an open question, although I am frank to say that the apparent weight of authority, at least outside of Ohio, New York, Massachusetts and Vermont, is overwhelmingly against the contention that relief may be granted for breach of collateral conditions.

The question to be determined of course is, what the law of Ohio is on this subject.

An exceedingly interesting case on this point is that of *Eichenlaub* v. *Neil*, 10 O. C. C., 427.  The opinion in the case was written by Summers, J., and the judgment of the circuit court in this case was affirmed without report in 56 O. S., 782. So that this case, properly understood, may rightfully be said to determine the law of Ohio on this subject.  The syllabus is as follows:

''Equity will relieve against a forfeiture of a lease incurred by the breach of a covenant to pay taxes, when the breach was not wilful or the result of gross negligence, and no demand for the payment of the taxes was made by the lessor prior to declaring the forfeiture.''

This case involved forfeiture of a· 99 year lease. · It appeared that the lessee had failed to pay the taxes.  The contention was made by the lessee in this case that there was no formal demand, and that,· therefore, no forfeiture could result, because of lack of such demand.  The court discusses that question, and holds that a demand was necessary.  But of course that has no important bearing upon the question here.  The court, however, discusses the question as to the power of a court of equity to

relieve against forfeiture as to conditions other than those involving the payment of rent. At page 435 of the opinion is found the following:

"The courts of equity could not relieve a tenant from forfeiture for breach of a covenant to insure. Lord Eldon laid it down that the court would not relieve against breaches of covenants except in cases where payment of money is a complete compensation, and will put the party in the same situation as he would have been if there had been no breach. In this case the landlord could not by any payment of money be put into the same situation, as he was entitled to be under the covenant. This rule having been found to operate very hardly on those few lessees who inadvertently and not wilfully neglected to insure, the Legislature stepped in and remedied it, but in the case of such inadvertent neglects only." Quoting from *Snell's Principles of Equity*, 314.

The same author says:

"It seems not quite settled whether equity will (and the better opinion is that equity can not) relieve against a forfeiture arising from any breach of covenant other than the breach of covenant to pay rent, unless under very special circumstances. Equity will, however, require the covenantee to be satisfied with a substantial performance on the part of the covenantor, where the nature of the covenant permits of such performance.

"It was an inflexible doctrine of the ancient common law, that parties must be held to a strict performance of all the stipulations of their valid agreements; that is, unless the agreement was wholly void from its illegality. Whenever, therefore, the full penalty or forfeiture would be enforced by a court of law without the slightest regard to the amount of damages actually sustained by the obligee or promise from the default. * * *

"The general doctrine was finally settled that, wherever a penalty or forfeiture is inserted merely to secure the payment of money, or the performance of some act, or the enjoyment of some right, or benefit, equity regards such payment, performance or enjoyment as the real and principal intent of the instrument, and the penalty or forfeiture as merely an accessory, and will therefore relieve the debtor party from such penalty or forfeiture, whenever the actual damage by the creditor party can be adequately compensated. The application

of the principle in such cases, and the relief against penalities or forfeitures, must always depend upon the question whether compensation can or can not be made. If the principal contract is merely for the payment of money, there can be no difficulty; the debtor party will always be relieved from the penalty or forfeiture upon paying the amount due and interest. If the principal contract is for the performance of sume other act or undertaking, and its non-performance can be pecuniarily compensated, the amount of such damages will be ascertained, and the debtor will be relieved upon their payment." *Pomeroy's Eq. Juris.*, Secs. 381, 433.

Judge Summers also quotes from *Pomeroy's Equity Jurisprudence,* Section 450, as follows:

"It is well settled that a court of equity will not, under ordinary circumstances, set aside forfeitures incurred on the breach of many covenants contained in leases, or of stipulations in other agreements, although the compensation for the resulting injury could be ascertained without difficulty; and, on the other hand, the relief is often given, as will appear from subsequent paragraphs, where the agreement secured by the clause of forfeiture is not one expressly and simply for the payment of money."

Sec. 452. "A court of equity will refuse to aid a defaulting party and relieve against a forfeiture if his violation of the contract was the result of gross negligence, or was wilful and persistent."

The court also quotes with approval the case of *Noyes* v. *Anderson,* 124 N. Y., 175:

"A court of equity has power to relieve a party against forfeiture or penalty incurred by the breach of a condition subsequent, when no wilful neglect on his part is shown, upon the principle that a party having a legal right shall not be permitted to avail himself of it for the purpose of injustice and oppression."

The court also quotes the following:

"Equity will relieve against a forfeiture incurred by the breach of a covenant to insure in a lease of real estate, caused

by accident or mistake, if no actual damage has been sustained by the lessor.'' *Mactier* v. *Osborn,* 146 Mass., 399.

Further in the course of the opinion the court quotes from *Story on Equity,* Section 1317:

''A court of equity regards a penalty or forfeiture as intended to secure the fulfillment of the contract and not to enable one party to profit by the default of the other, or obtain a collateral advantage which was no part of the main design.''

The court here, as I have said, granted the relief and relieved the party from the forfeiture, which was sought to be effected, on the ground that there was no evidence that the breach was wilful or the result of gross negligence. See the cases cited by Judge Summers in 10 O. C. C. In 124 N. Y., 175, the syllabus is as I have read. In the opinion in the latter case, at page 179, Bradley, Judge, uses this language:

''The power of a court of equity in cases properly requiring it, will be exercised to relieve a party against forfeitures and from penalties. And this is upon the principle of equity jurisprudence that a party having a legal right shall not be permitted to avail himself of it for the purpose of injustice or oppression. The doctrine was applied to relieve a mortgagor from the forfeiture to which he was subjected, and an obligor from the penalty with which he was chargeable by the common law on default. It is also not only available to cases of leases where forfeiture of the term and entry are provided for as the consequence of non-payment of rent on the day it becomes due, but is extended to other cases, and more especially to those (although not necessarily confined to them) where the default resulting in forfeiture is in payment of money, as in such case adequate compensation can be made. This relief will not be afforded in cases where the default and forfeiture have been occasioned by the wilful neglect of the party seeking it. Nor will it ordinarily be given where the breach is of a condition precedent, although that rule may not be without exception. In the present case the default was in the performance of a condition subsequent, because the right of the plaintiff under the contract vested on its delivery subject to the provision that it should be avoided or rendered ineffectual by a subsequent breach of the conditions, or any of them, upon

the observance of which the defendant's right given by the contract depended."

Quoting from *Giles* v. *Austin,* 62 N. Y., 486, Justice Bradley says:

"The cases in which relief has been denied, are either where the lessee has wilfully committed some affirmative act in violation of his covenant or been guilty of some default, the precise damage for which can not be ascertained by any rule. But where the covenant is simply for the payment of money, the forfeiture is regarded as security merely for such payment, and equity will not allow it to be enforced after the party has obtained all that it was intended to secure to him."

In the case of *Mactier* v. *Osborn,* 146 Mass., 399, the syllabus of which has already been quoted, the court, in the opinion, says (p. 401):

"The demandant cites many cases, mostly English, to the point that courts of equity will not grant relief from a forfeiture for breach of a condition to insure. This may be so where there is a wilful and intentional neglect to insure according to the covenant. But where the failure to insure is the result of accident or mistake, each case must be determined by the circumstances of the particular case.

"Judge Story states the rule in England to be, that 'in all cases of forfeiture for the breach of any covenant, other than a covenant to pay rent, no relief ought to be granted in equity, unless upon the ground of accident, mistake, fraud, or surprise.' "

This would seem to indicate a relaxation of the severity of the ancient English rule, even in that jurisdiction.

The court say, page 402:

"The result of the authorities, supported by sound principle, is, that where there has been a breach of a covenant to pay rent, equity will relieve against a forfeiture although the breach is wilful on the part of the lessee; and where there has been a breach of a covenant to perform some collateral duty, such as to repair or insure, which has been caused by accident or mistake, equity will relieve if the lessor can by compensation or otherwise be placed in the same condition as if the breach had not occurred."

In the case of *Hagar, Admr.* v. *Buck et al*, 44 Vt., 285, the syllabus is as follows:

"Wherever a forfeiture is taken advantage of that works a hardship, and full compensation can be made, courts of equity generally relieve against it upon the making of such compensation."

And at page 291, the court in its opinion says:

"Wherever a forfeiture is taken advantage of that works a hardship, and full compensation can be made by the person against whom it is wrought, to the one who has taken advantage of it, courts of equity generally relieve against it, upon the making of such compensation."

In the case of *Gilman Henry* v. *Tupper et al*, 29 Vt., 358, the syllabus reads as follows:

"A court of equity may grant relief from the forfeiture of an estate conditioned for the maintenance and support of the grantee where the forfeiture was accidental and unintentional, and not attended with irreparable injury. But it rests in the sound discretion of the court when relief shall be granted in this class of cases."

In the course of the opinion, on page 373 the court say:

"But in all cases where the thing to be done was something collateral, * * * before the court could grant relief, they have pretty generally, I think, required to be satisfied that the omission to perform was not wilful but accidental and by surprise, and it has been held always in such cases to depend very much upon the circumstances of the particular case. That relief might be granted in equity, even where the condition was for the performance of collateral acts, seems to be admitted in most of the cases upon this subject." Citing *Webber* v. *Smith,* 2 Vernon, 103; *Hack* v. *Leonard,* 9 Mod., 90; *Cox* v. *Higford,* 2 Vernon, 664; *Saunders* v. *Pope,* 12 Vesey, 282. "These are cases of non-repair of premises leased; and the chancellor, Lord Erskine, says in the last case, 'I can not agree it is necessary the non-performance of the covenant should have arisen from mere accident or ignorance.' The cases are abundant where the relief has been granted against forfeiture of title by non-performance of other collateral acts, as for not renewing a lease

(*Rowstone* v. *Bently,* 4 Br. C. C., 415), or for cutting down timber when covenanted against, on pain of forfeiture.''

In the case of *Giles* v. *Austin,* 62 N. Y., 486, the syllabus is as follows:

''Where, after issue joined in an action of ejectment brought by a lessor to enforce a forfeiture incurred by the non-payment of taxes and assessments as stipulated in the lease, the lessee pays up the arrears, he may maintain an equitable action to be relieved from the forfeiture. He is not required to seek relief by application in the ejectment suit for leave to file a supplemental answer.

''A covenant in a lease by the tenants to pay taxes and assessments is in the nature of a covenant to pay money and a forfeiture incurred by a breach thereof may be relieved against on the same principles. In the absence of bad faith on the part of the tenant, and where the position of the parties has not been changed, and no new rights have intervened, mere delay on the part of the tenant in making the stipulated payments will not bar him from relief.''

It is evident, it seems to me, that there is a manifest disposition on the part of courts of equity to avoid the rigor of the old English rule of forfeiture; and I think the cases to which I have called attention, and such as I have examined to which I have not made reference, establish the doctrine that relief from forfeiture will be granted in the cases following:

1.  Where the breach involved was the result of accident or mistake, or grew out of ignorance, inexperience, or inadventence.

2.  Where the lessee has expended considerable sums in improvements upon the premises.

3.  Where it would be unconscionable to enforce a forfeiture.

4.  Where the breach is technical rather than substantial.

5.  Where the breach has not done damage to the lessor.

I think it results from the reasoning of Judge Summers in the case of *Eichenlaub* v. *Neal, supra,* that the older rule, as it obtained originally in England, is not the rule in Ohio, whatever may be said as to other jurisdictions. It is true that the case relates to a covenant to pay taxes, and taxes can be directly measured in money; but the reasoning in that case is as

applicable to the two breaches that are complained of here in the case at bar as it was to the facts presented by that case. And it is interesting to note that the case of *Maclier* v. *Osborn,* 146 Mass., 399, is quoted with approval, and that case relates to a breach of covenant to insure.

The breach complained of in respect to the failure to record is one which did not operate to the prejudice of the lessor. No interest or right of the lessor was in any manner imperiled by the failure to record; and counsel in argument have not called the court's attention to any circumstances that would make such failure operate to the prejudice of the lessor. But whatever might have resulted, it is plain and conceded that no damage did result from the failure to record; and I am inclined to think that, inasmuch as at the time when it is sought to terminate this lease that breach had been cured, and fully cured, it would be an unwarrantable exercise of the mere power of the court, as distinguished from the right of the court, to say that the lessees should forfeit all rights under the lease because of such mere technical breach of conditions.

The other breach, however, is more serious. It is true that the policies of insurance were kept alive, but they stood in the names of Joseph and Lewis Koblitz. They failed to secure the consent of the insurance companies to the assignment of such policies. By the assignment of the lease, they ceased to have any insurable interest in the property. In case of loss, no recovery could have been had against the companies had they availed themselves of these facts as a defense. The suggestion is made by counsel for plaintiff that the Abeyton Realty Company would have been protected despite the fact that the policies could not be recovered upon by the Koblitz Realty Company. I do not think that this contention is sound. If the facts were such as to defeat a recovery by the insured, or the persons named in the policies as the insured, then there would be nothing to be paid to anybody upon the policies. For three and one-half years there was in fact no insurance which would protect the Abeyton Realty Company. This was a distinct breach of the provisions of the lease. I am inclined to think, however, that failure to

take such steps as to make the policies valid after the assignment of the lease was not wilful and intentional, but was due to ignorance or inadvertence; and I am not unmindful of the fact that it has been very strongly urged in argument that the failure to secure the consent of the company to such assignment, and indeed the assignment of the lease itself, were mere juggles, and were due to a desire to reap some unfair advantage, or to avoid some legal obligation. But I am unable to find that such contention is supported by the proof; and I am reinforced in this conviction by the fact that if the leased premises had been destroyed by fire, the lessees would still be liable for the payment of rent. This fact alone would seem to make it impossible to believe that the failure to secure the consent of the companies to the assignment of the policies was wilful or intentional or fraudulent. But from whatever cause such failure proceeded, it is still incontestably true that the defendant company has not been injured by such failure. That they might have been injured, is certainly true; but that they have suffered, surely will not be claimed.

This breach was cured prior to the giving of notice of election to avoid the lease upon this ground. I am unable to conceive of any canon of ethics that would justify the court in holding that these breaches, which were technical rather than substantial, would warrant the court in enforcing a forfeiture of the lease in the face of the fact, undisputed, that the lessees, or their assignee, have paid the rents for ten years as they accrued, have paid all the taxes, assessments and charges, and have expended from ten to twelve thousand dollars upon the property. The aggregate of the rents is $60,000. The aggregate of improvements is said to be from $10,000 to $12,000. To hold that, because of these mere technical breaches, the lessor may now take possession of the property, or that the lessee shall be disentitled to relief in equity, would in my judgment be unwarranted by the facts, and would be an act of injustice.

The decree of the court will be as follows: Decree for plaintiff; order see journal. Defendants give notice of appeal. Bond fixed at five thousand dollars.